

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AB:FJN

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 10, 2018

By Email and ECF

The Honorable Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Ronell Watson
                Magistrate Docket No. 18-M-1191

Dear Judge Tiscione:

      The defendant Ronell Watson is scheduled to be arraigned today on the above-referenced complaint. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because there is a presumption of detention due to the nature of the charges, and the defendant presents both a danger to the community and a risk of flight.

I.      <u>Background</u>

      As alleged in the complaint, the defendant was arrested on Saturday evening after he attempted to murder an on-duty FBI agent (the "FBI Agent") by repeatedly firing gun shots at the agent. According to surveillance video recovered from the scene, the FBI Agent was parked in an unmarked car on Canarsie Road. The defendant parked his car near the front of the FBI Agent's car, partially obstructing the FBI Agent's ability to drive forward. The defendant then exited his car and approached the driver side door of the FBI Agent's car with one hand inside the front pocket of his hooded sweatshirt. The FBI Agent then began to maneuver his car around the defendant's car. As he did so, the defendant pulled out a firearm and begin firing at the FBI Agent as the FBI Agent drove away. The FBI Agent was hit by at least one round and suffered a gunshot wound to his torso. The FBI Agent then exited his car, drew his firearm, and returned fire at Watson. The FBI Agent struck Watson with at least one round and Watson fled the scene in his car.

      The defendant then left his car at a nearby auto body shop and sought treatment for his wounds at Kingsbrook Jewish Medical Center. At the hospital, the defendant falsely told law enforcement officers that he had been a bystander victim of a

gunfight between other individuals. Law enforcement officers at the hospital then overheard the defendant call a female, believed to be Molissa Gangapersad ("Gangapersad"), and told her, in sum and substance and in part, to go to the house and "get the jewelry and get rid of it." The investigation revealed that the defendant and Gangapersad are in a romantic relationship and live together.

Law enforcement officers then responded to the defendant's and Gangapersad's shared residence. Gangapersad agreed to a voluntary interview and falsely told FBI agents that she had not seen the shooting. After being confronted with surveillance video showing that Gangapersad was on her front porch during the shooting, and in a position to view the shooting, Gangapersad admitted that she had seen the incident. A search of the residence, pursuant to a search warrant, revealed approximately 1.5 lbs. of marijuana, $15,000 in cash, and large amounts of jewelry in the defendant and Gangapersad's shared bedroom. The investigation further revealed that the defendant is associated with the Crips street gang.[1]

The defendant is presently charged in a complaint alleging: (1) attempted murder of a federal officer, in violation of 18 U.S.C. § 1114, and (2) using, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).[2]

II.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence, see United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985), while a finding of risk of flight must be supported by a preponderance of the evidence, see United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

---

[1] For example, a photograph provided by an associate of the defendant shows a photograph posted by the defendant to his Instagram account. In that photograph, the defendant is holding a blue bandana, which is an item that is associated with the Crips. Moreover, the photograph is captioned "Happy CDaY to my boi," which is believed to be shorthand for "Happy Crips Day." (See Exhibit A).

[2] Gangapersad is also being arraigned today on charges of lying to FBI agents in connection with the investigation of the shooting described herein, in violation of 18 U.S.C. § 1001.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, all of these factors weigh heavily against pretrial release.

### III. The Court Should Enter a Permanent Order of Detention for the Defendant

#### A. The Nature and Circumstances of the Offense Charged and the Defendant

The charged offense is extremely serious; the defendant is charged with attempting to kill a federal agent. The charged offense involves efforts by the defendant to cause the death of an FBI Special Agent by repeatedly shooting at him with a firearm. In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence. See 18 U.S.C. § 3142(g)(1). The charged offenses unquestionably fall within this category, and this is precisely the type of incident where the serious nature of the crimes should counsel against release.

Moreover, the charged offenses carry a maximum sentence of life imprisonment and a mandatory minimum of 10 years' imprisonment. See 18 U.S.C. § 924(c) (calling for a mandatory minimum sentence of 10 years consecutive to the sentence imposed on other charges and a maximum sentence of life); 18 U.S.C. § 1114 (incorporating punishment for attempted murder in violation of 18 U.S.C. § 1113). The prospect of a lengthy term of incarceration, coupled with the strength of the evidence as set forth in the criminal complaint and herein, confirms the defendant's serious risk of flight.

Additionally, the defendant has been arrested at least 11 times for narcotics trafficking, grand larceny, resisting arrest, and other offenses. Though the government is not currently aware of any criminal convictions, the brazenness and precision of the attack in the case strongly suggests that the defendant is familiar with firearms and has utilized them before. Moreover, a records check reveals that the defendant is not licensed to carry a firearm in New York City. As such, the defendant committed the crimes with an illegally obtained firearm.

#### B. The Weight of the Evidence

The weight of the evidence against the defendant is extremely strong. The shooting incident was captured on multiple video cameras, including at least one camera from the defendant's own residence. Video surveillance also captured the defendant getting rid of his car and arriving at the hospital to seek treatment for gunshot wounds, providing further corroboration that he was the shooter.

3

Accordingly, the evidence against the defendant is extremely strong, and this factor weighs heavily in favor of a finding that the defendant is both a danger to the community and a flight risk.

### C. The Danger to the Community Posed by the Defendant's Release

The defendant would unquestionably pose a significant danger to the community if released on bond. Not only did he attempt to murder an FBI Special Agent on Saturday, but he did so without any legitimate provocation. Fortunately, the victim in this case was an armed law enforcement officer who was able to defend himself. But for his training, experience, and quick reaction to drive away and return fire, the agent could have easily been killed. The defendant simply cannot be trusted to be released into the community.

## IV. Conclusion

For all of the foregoing reasons, the defendant should be detained pending trial. The defendant is charged with extremely serious offenses that carry a maximum sentence of life imprisonment. The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the court's directives, and the Court should thus enter a permanent order of detention pending trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

_____
Francisco J. Navarro
Assistant United States Attorney
(718) 254-6007

cc:   Clerk of Court (by ECF and hand)

# **EXHIBIT A**

