UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

          v.

RONELL WATSON,

          Defendant.
----------------------------------------------------------X

**DECISION & ORDER**
19-CR-4-1 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:** Ronell Watson ("Defendant") brings this motion seeking a bail hearing and order granting his release on secured bond to home confinement and electronic monitoring, while he awaits sentencing. Mot. for Release ("Def. Mot.") at 1, ECF No. 159. In the alternative, Defendant requests his sentencing be adjourned to allow him to meet with counsel. *Id.* For the reasons discussed below, Defendant's motion for temporary release is DENIED in all respects and his request for an adjournment is GRANTED.

## PROCEDURAL HISTORY

Defendant was convicted on July 17, 2019, after a jury trial of the following offenses: (1) attempted murder of a federal officer, in violation of 18 U.S.C. § 1114(3); (2) assault with a deadly weapon on a federal officer, in violation of 18 U.S.C. § 111(a)(1), (b); and (3) unlawful discharge of a firearm in connection with Counts One and Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i)–(iii). Jury Verdict Sheet at 1, ECF No. 104. Defendant is detained in the Metropolitan Detention Center ("MDC") in Brooklyn awaiting sentencing.

Defendant now brings this motion seeking a bail hearing and order granting his release on secured bond to home confinement and electronic monitoring. Def. Mot. at 1. In the alternative, Defendant seeks to adjourn his sentencing to allow him to meet with counsel. *Id.* In support of the motion, Defendant proposes release under a $1,000,000.00 bond, secured by his mother's home and signed by three family members, to home confinement, and electronic monitoring. *Id.*

The Government opposes Defendant's motion, arguing Defendant "is undeniably a danger to the community, as he stands convicted of attempting to murder a Special Agent of the

1

Federal Bureau of Investigation" and "is also facing a potential life sentence, which makes him a significant flight risk." Gov't Letter in Opp'n to Def.'s Mot. ("Gov't Opp.") at 1, ECF No. 160.

## THE COVID-19 CRISIS

Beginning in late February 2020, a new viral infection, COVID-19 has swept into the United States. Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*, N.Y. Times (May 5, 2020), https://www.nytimes.com/article/coronavirus-timeline.html. Since arriving in the United States "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent." *United States v. Stephens*, 15-CR-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (Nathan, J.). The novel infection has been found to affect more severely certain groups of people, significantly increasing their risk of death. *Groups at Higher Risk for Severe Illness*, Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 4, 2020). Such groups include people 65 years of age and older and people of all ages with certain underlying medical conditions. *Id.*

In particular, prison populations have been identified as being a potential hotspot for outbreaks of the virus. Tom McParland, *Pressure Grows to Better Address Bail Applications as COVID-19 Hits NY Federal Jails*, N.Y. Law Journal (Mar. 25, 2020, 06:11 P.M.), https://www.law.com/newyorklawjournal/2020/03/25/pressure-grows-to-better-address-bail-applications-as-covid-19-hits-ny-federal-jails/; Emma Brown & Dalton Bennett, *'Disaster waiting to happen': Thousands of inmates released as jails and prisons face coronavirus threat*, Washington Post (Mar. 25, 2020, 06:00 AM), https://www.washingtonpost.com/national/disaster-waiting-to-happen-thousands-of-inmates-released-as-jails-face-coronavirus-threat/2020/03/24/761c2d84-6b8c-11ea-b313-df458622c2cc_story.html. Indeed, as of May 5, 2020,

the MDC reported 6 confirmed cases of COVID-19 among inmates and 36 confirmed cases among staff at the facility. Letter from M. Licon-Vitale, Warden, MCC New York and D. Edge, Warden, MDC Brooklyn to the Honorable Roslynn R. Mauskopf (May 5, 2020), https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200505_042614.pdf. Additionally, as of May 5, 2020, the Federal Bureau of Prisons ("BOP") reports 2,066 confirmed cases of COVID-19 among federal inmates and 359 cases among staff nationwide. Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited May 6, 2020).

On March 13, 2020, the BOP issued a COVID-19 Action Plan to reduce the spread and transmission of the virus. Fed. Bureau of Prisons, Bureau of Prisons COVID-19 Action Plan (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp ("BOP Action Plan"). The BOP Action Plan suspended legal visits to inmates for 30 days but allowed for "case-by-case accommodation" at the local level and also specified "confidential legal calls will be allowed in order to ensure inmates maintain access to counsel . . . . If approved for an in-person visit, the attorney will need to undergo screening using the same procedures as staff." *Id.* On March 31, 2020, the BOP announced the implementation of Phase Five of its Action Plan, which includes securing all inmates "in their assigned cells/quarters to decrease the spread of the virus" for 14 days. COVID-19 Action Plan: Phase Five, Fed. Bureau of Prisons (Mar. 31, 2020, 06:30 P.M.), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. On April 14, 2020, the BOP extended the enhanced measures of Phase Five until May 18, 2020. Press Release, Fed. Bureau of Prisons, Bureau of Prisons COVID-19 Action Plan: Phase Six, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf. The MDC and the Metropolitan Correctional Center ("MCC") in Manhattan also prepared a list of inmates who may be at heightened risk due to the epidemic.

In response to the pandemic, Chief Judge Mauskopf of the Eastern District of New York issued an administrative order excluding time, under 18 U.S.C. §§ 3161(a)–(c), (h)(7)(A), in all criminal matters through April 27, 2020. E.D.N.Y. Admin. Order No. 2020-06. On April 21, 2020, Chief Justice Mauskopf extended the order and excluded time in all criminal matters through June 15, 2020. E.D.N.Y. Admin. Order No. 2020-15. Additionally, under the authority provided by section 15002(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Chief Judge Mauskopf authorized the use of video conferencing and telephone conferencing in, *inter alia*, detention hearings, arraignments, and misdemeanor pleas and sentencings in the Eastern District of New York. E.D.N.Y. Admin. Order No. 2020-13. Chief Judge Mauskopf also ordered the Wardens of the three prisons with pre-trial detainees for the Eastern District of New York to provide twice weekly, written status reports concerning "the incidence of infection of COVID-19 at each facility and the measures undertaken to mitigate the spread of COVID-19 within each facility." E.D.N.Y. Admin. Order 2020-14.

## **DEFENDANT'S MOTION FOR TEMPORARY RELEASE**

On April 22, 2020, Defendant filed his motion for a bail hearing and order granting his release on secured bond or, in the alternative, an adjournment of his sentencing. Def. Mot. at 1. Defendant argues his pre-existing ophthalmological condition and delays in treatment of his condition are "exceptional reasons" under 18 U.S.C. § 3145, warranting his pre-sentencing temporary release. *Id.* at 1, 3–5. Defendant submits the opinion of Dr. Jonathan Giftos regarding the situation at the MDC as well as statistics regarding the spread of COVID-19 within the prison. Exs. A–C to Def. Mot. Defendant also submits email correspondence between his counsel and officials at the MDC where his counsel seeks to have his ophthalmological condition treated, apparently unsuccessfully. Exs. D–E to Def. Mot. Further, Defendant cites statistics and

4

information regarding the conditions at the MDC and the potential for rapid spread of the coronavirus within the MDC and prisons generally. Def. Mot. at 2–3.

The Government opposes Defendant's motion, arguing Defendant is a severe danger to the community and immense risk of flight considering his convictions. Gov't Opp. at 4–6. The Government also cites measures taken by the BOP to mitigate the spread of COVID-19 within the BOP and ensure the safety of its staff and inmates. *Id.* at 7–9.

## DISCUSSION

Under the Bail Reform Act ("BRA"), a judicial officer shall order a person convicted of a crime of violence or facing life imprisonment "awaiting imposition or execution of sentence be detained unless . . . (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and . . . the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2).

In this case, Defendant was convicted of attempted murder of a federal officer and assault with a deadly weapon, which are crimes of violence under the BRA. 18 U.S.C. § 3156(a)(4) (defining crime of violence). The Court has already denied Defendant's motion for an acquittal and new trial. ECF No. 142. The Government expects to recommend a sentence of 330 to 382 months' imprisonment. Gov't Opp. at 4. Defendant is thus subject to mandatory detention under 18 U.S.C. § 3143(a)(2).

Defendant, instead, seeks relief pursuant to 18 U.S.C. § 3145(c). Section 3145(c) creates a narrow exception to mandatory presentence detention under 18 U.S.C. § 3143(a)(2). *See, e.g., United States v. Lopez*, 19-CR-116, 2020 WL 1678806, at *1 (S.D.N.Y. Apr. 6, 2020) (Cott,

5

M.J.). The narrow exception permits release of mandatory detainees, who meet the requirements for release under 18 U.S.C. § 3143(a)(1) or (b)(1), and "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Thus, section 3143(a)(1) supplies the threshold requirements a person convicted of a violent crime awaiting sentence must meet.

To warrant release under 18 U.S.C. § 3145(c) in these circumstances a district court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," 18 U.S.C. § 3143(a)(1), and "[o]nly then does the trial court consider the presence of exceptional circumstances making detention inappropriate." *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (citing *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir.1991) (*per curiam*). Exceptional reasons under the statute are those which "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *Id.* at 497. "The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'" *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004).

I. **Defendant Poses a Flight Risk and Danger to the Community**

The Court finds Defendant unequivocally poses a flight risk and danger to the community. Defendant was convicted of using an illegal firearm to shoot an FBI agent in front of Defendant's home without provocation. Defendant then lied to multiple law enforcement officers about his involvement in the shooting and attempted to destroy evidence linking him to the shooting. It is abundantly clear Defendant poses a significant danger to the community. Moreover, as Defendant faces a life sentence and the Government expects to recommend a sentencing range of 330 to 382 months' imprisonment, Gov't Opp. at 5, Defendant has every

incentive to flee. *See* 18 U.S.C. § 3142(e)(3) ("[I]t shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . [if] there is probable cause to believe that the person committed . . . an offense under section 924(c) . . . ."). At Defendant's arraignment, the Honorable Magistrate Judge Roanne L. Mann found him to be a danger to the community and ordered his pre-trial detention. Minute Entry, Jan. 14, 2019, ECF No. 16. The Court finds Defendant's conviction of the charged offenses only strengthens the conclusion Defendant poses a flight risk and is a danger to the community. Defendant does not meet the perquisite requirements for release under 18 U.S.C. § 3143(a)(1) and the Court need not consider whether Defendant has presented "exceptional reason" for his release. 18 U.S.C. § 3145(c); *DiSomma*, 951 F.2d at 496.

## II. Defendant Does Not Present a Sufficiently Exceptional Reason for His Release

Even were the Court to conclude Defendant was not a flight risk or danger to the community, Defendant has not presented an "exceptional reason" sufficient to justify his release under 18 U.S.C. § 3145(c). Undoubtedly, the onslaught of the COVID-19 virus is a critical concern and could in some cases be an "exceptional reason" under 18 U.S.C. § 3145(c). *Cf. Lopez*, 2020 WL 1678806, at *1. The analysis of whether a particular defendant has presented an "exceptional reason" must be done on a case-by-case basis. *See Lea*, 360 F.3d at 403.

The Court now turns to the specifics of Defendant's situation. Defendant's primary contention is the risk the COVID-19 crisis poses to his health. Def. Mot. at 6–8. Defendant argues his detention "prevents him from obtaining the timely medical care he needs for his complex ophthalmological condition. And it exposes him to greater risk of contracting COVID-19." Def. Mot. at 7. The Court finds neither argument sufficient to establish an "exceptional reason" warranting Defendant's release.

7

Having carefully reviewed Defendant's medical records at the MDC, the Court concludes Defendant was not denied timely medical care as a result of his detention during the crisis. Exs. A–B to Gov't Opp. The correspondence between Defendant's counsel and officials at the MDC reveal the delay of a single appointment, at the height of the COVID-19 crisis. Exs. D–E to Def. Mot. Defendant has not demonstrated any adverse medical consequence as a result of the delayed appointment.

Moreover, Defendant has failed to show his condition puts him "at higher risk of contracting COVID-19." Def. Mot. at 5. Defendant's condition is not listed by the CDC as putting him at heightened risk of infection, he was not included in the list of vulnerable inmates prepared by the MDC, and he has provided no medical evidence his condition places him at higher risk of infection. In his submissions, Defendant concedes "he is not in a high-risk category for complications from the virus." Def. Mot. at 5. "[T]he Court concludes that, in the absence of any evidence that defendant has a special condition making him substantially vulnerable to Covid-19, the pandemic alone, which is affecting the community in its entirety, is not a compelling reason warranting release at this point in time." *United States v. Marte*, 19-CR-795, 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020) (Stein, J.).

After due consideration of the particular risks faced by Defendant given his health concerns, this Court concludes the COVID-19 outbreak is not a sufficiently compelling circumstance to justify Defendant's release.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a bail hearing and order granting his presentencing release pursuant to 18 U.S.C. § 3145(c) is DENIED. Defendant's motion to adjourn the sentencing currently scheduled for Friday, June 26, 2020 is GRANTED. The

8

sentencing is adjourned to Thursday, October 1, 2020 at 12:00 Noon. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 159.

SO ORDERED.

Dated: May 6, 2020
      Brooklyn, New York

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE